## BUFFALO SUPERIOR COURT.

### GEORGE LEWIS agt. THE CITY OF BUFFALO.

An *issue of law* arising upon *demurrer to complaint,* will be disposed of according to the law as it stands at the time of the *trial of the issue,* where it does not appear upon the face of the complaint when the action was commenced, when, as claimed, another law would be applicable.

Where the charter of a municipal corporation makes the statement of *certain facts* in a conveyance or declaration of sale of lands for taxes or assessments, *presumptive evidence* of the legality or validity of such tax or assessment, and the proceedings therein, the courts in the absence of any statutory provision, have *equity jurisdiction* of an action to restrain the proceedings and set aside the tax or assessment, where the instrument or proceedings containing such presumptive evidence is presented.

The rule is well settled that whenever the claim of the adverse party to the land is valid upon the face of the instrument, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proved to establish the invalidity or illegality, the court will entertain jurisdiction in equity.

Where a statute giving the courts preventive jurisdiction of equity over all local assessments in a municipal corporation is passed, pending an equitable action to set aside a certain assessment, the only effect of the statute is to remove any *want of equity* which it might be urged deprived the court of jurisdiction before the statute.

*December General Term*, 1864.

*Before* MASTEN, VERPLANK, *and* CLINTON, *Justices.*

DEMURRER to complaint. The charter of the city of Buffalo authorizes the common council to cause streets to be graded and paved, and sewers and crosswalks to be built, and the expense thereof to be assessed upon the lands deemed benefitted thereby; but provides that no street shall be graded or paved when the expense thereof will exceed two hundred dollars, except upon the application of a majority of the property holders liable to be assessed to pay for the same, nor until a certificate of the city assessors shall be presented to the common council, stating that such application is signed by a majority of such property holders. An application was presented to the common council asking for the construction of a sewer in Niagara street, for the grading and paving of the street, and the construction of crosswalks. The application was accompanied by the certificate of the assessors that the application was signed by a majority of the property holders liable to be assessed to pay for the improvements mentioned in it.

Upon this application and certificate, the common council in the year 1859, caused a sewer to be constructed in Niagara street, the street to be graded and paved and crosswalks to be built, and the expense to be assessed upon the lands deemed benefitted thereby. The expense amounted to several thousand dollars. The lands assessed had been sold by reason of the non-payment of the assessment. No conveyance or declaration had been executed to the purchaser, but the defendant was taking steps to complete the sale.

A. P. NICHOLS, *for plaintiff.*

C. BECKWITH, *for defendant.*

By the court, MASTEN, J. The certificate of the assessors was not sufficient to authorize the common council of the city of Buffalo to make the local improvement, and the assessment mentioned in the complaint. The assessment, therefore, is illegal. This is settled by the court of appeals in the following cases: *Lathrop* agt. *The City of Buffalo, Dolan* agt. *The City of Buffalo, Howell* agt. *The City of Buffalo, Efner* agt. *The City of Buffalo.*

The next question is, is the plaintiff entitled to the equitable relief demanded in the complaint ? By an amendment of the charter of the city of Buffalo in 1858, the preventive jurisdiction of equity was extended over all local assessments ordered under the charter of the city of Buffalo, and if it was made to appear that the proceedings upon any such assessment were illegal, it was made the duty of the court to restrain further action under such assessment (*Laws of* 1858, *p.* 644, § 8). This provision was repealed in 1861 (*Laws of* 1861, *p.* 630, § 21). It was substantially re-enacted in 1864 (*Laws of* 1864, *p.* 1045).

Upon the argument of the demurrer, the counsel of the defendant stated that this action was commenced in April, 1863, and claimed that we must dispose of the question raised by the demurrer as the law stood at the time of the commencement of the action. He cites us in support of this to a remark made in the opinion delivered in the court of appeals upon the demurrer to the complaint in *Howell* agt. *The City of Buffalo.* The counsel of the plaintiff admits the statement as to the time when the action was commenced to be true, but insists that we cannot notice the fact.

The opinion of the court of appeals in *Howell* agt. *The City of Buffalo,* was delivered by Judge MARVIN, who after stating that the question of jurisdiction and relief was not

up in the case of *Lathrop* agt. *The City of Buffalo*, by rea-son of the provisions of the act of 1858, above mentioned, says : "This provision was repealed in 1861, before this action was commenced." I presume he meant before the issue of law formed by the demurrer was tried. A demur-rer raises only such questions as appear upon the face of the pleading to which it is put in. Before the Code, the declaration in an action in a court of law was required to be .entitled of the proper term of the court, and the title constituted a part of the declaration. If from the aver-ments in the declaration it appeared that the cause of action accrued after the time mentioned in the title of the declaration, the defendant might demur. The courts of law were only open at stated terms, and the entitling of the declaration grew out of the old proceeding *ore tenus*.

In the court of chancery, which was always open, there was no practice analogous to that of the entitling the decla-ration in courts of law. By the Code, the complaint is not required to be entitled (*Code*, § 142). The act of 1864 had been in force over the half of a year when the demur-rer was brought on to argument before us.

It does not appear upon the face of the complaint when the action was commenced. We must, therefore, dispose of the issues of law formed by the demurrer, according. to the law at the time of the trial of them. (*Maynard* agt. *Talcott*, 11 *Barb. R.* 569; *Smith* agt. *Holmes*, 19 *N. Y. R.* 271.) The defendant's course was, upon the passage of the act of 1864, to have obtained leave to withdraw the demurrer, and present the question by answer. This dis-. poses of the case as it is now before us. We are requested by the counsel of both parties, to express our opinion upon the question of jurisdiction, on the assumption that the action was commenced in 1863. It is proper that we should do so; because the defendant should have leave to answer. This leads us into two inquiries : 1st. Had chancery juris diction in a case like the one before us, to grant the relief

sought by the complaint without any statute? 2d. If not, what effect has the statute of 1864 upon this action, which had been commenced before its enactment? First. Prior to the decision of the court of appeals in December, 1863, in the cases of *Howell* agt. *The City of Buffalo*, and *Efner* agt. *The City of Buffalo*, we supposed the jurisdiction of chancery in cases like the one before us to be well established. Those cases arose in this court. *Howell's* case was decided upon demurrer to the complaint; *Efner's* case upon the pleadings and proofs. They grew out of the same local improvement out of which the case now before us arises, and are not distinguishable from it. This court maintained jurisdiction, and granted relief. Upon appeal, our judgment in each case was reversed by the court of appeals, on the single ground of jurisdiction or want of equity That court held the assessment to be illegal and void. In the opinion written in this court in those cases, nothing was said upon the question of the jurisdiction of equity. The case of *Scott* agt. *Onderdonk* (14 *N. Y. R.* 9), was considered decisive of it. We regarded that case not only to be binding upon us, but also to be well decided.

One head under the general jurisdiction which courts of equity exercise in favor of a party *quia timet*, was thus defined in the court of appeals in *Haywood* agt. *The City of Buffalo* (14 *N. Y. R.* 534): "Where the claim of the adverse party to the land is valid upon *the face of the instrument*, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proved in order to establish the invalidity or illegality." This branch of equity jurisdiction is well established. (*Story's Eq. Juris.* § 700, *and cases cited; Peirsall* agt. *Elliott*, 6 *Peters' U. S. R.* 95, 97; *Hamilton* agt. *Cummings*, 1 *John. Ch. R.* 517; *Mayor of Brooklyn* agt. *Messerole*, 26 *Wend.* 132, 137; *Mc-Evers* agt. *Lawrence*, *Hoffman's R.* 172; *Van Dorn* agt. *Mayor of New York*, 9 *Paige's R.* 388; *Chautauque Co. Bank* agt. *White*, 6 *Barb. R.* 590, 605; *Field* agt. *Holbrook*, 6

*Duer's R.* 597; *Ward* agt. *Dewey,* 16 *N. Y. R.* 519; *Scott* agt. *Onderdonk, supra.*)

We are not able to distinguish the case of *Scott* agt. *Onderdonk,* from *Howell* agt. *The City of Buffalo,* or from the case now before us. *Scott* agt. *Onderdonk* came before the court upon demurrer to the complaint. The substance of the complaint was, that the city of Brooklyn, without having laid an assessment affecting the plaintiff's lots of land, sold them, as though they had been legally assessed, to the defendant Onderdonk, for a long term of years, and was about to execute a conveyance of them to him, and prayed that the sale, &c., might be set aside, and the city be enjoined from executing the conveyance. The charter of the city of Brooklyn provided that in the conveyance of lands sold for taxes or assessments, to be executed to the purchaser, "*the proceedings had for the sale thereof shall be briefly set forth,* and such conveyance shall be deemed *prima facie* evidence of *the facts therein recited and set forth*" (*Laws of* 1834, *p.* 108, § 45).

The court of appeals held that equity had jurisdiction to grant the relief sought, on the ground that the statute contemplated that the purchaser should be furnished with a document bearing on its face *prima facie* evidence of a title in him, which could only be impeached by proof *aliunde* of the *falsity* of its recital. The provisions of the charter of the city of Buffalo are more favorable to the purchaser at a tax or assessment sale than those of the city of Brooklyn, upon which *Scott* agt. *Onderdonk* was decided. It provides that the conveyance (which it calls a declaration) of lands sold for taxes or assessments, to be given to the purchaser, shall state "the fact of assessment, advertisement and sale, the date of the sale, and the period for which the premises were sold; which declaration may be recorded as a lease of real estate, and shall be *presumptive evidence* in all courts and places, *that such tax or assessment was legally imposed, and that due proceedings*

*to authorize such sale were had"* (*Laws of* 1853, *p.* 477, § 18), "*It shall not be necessary* in any proceeding for the collection of any tax or assessment, or *in any suit or proceeding in which such tax or assessment shall come in question,* to prove the validity thereof, or the regularity of any of the proceedings by which the same shall have been imposed,* but said tax or assessment *shall be deemed valid, regular and conclusive,* subject to the right of any party to show the contrary by *affirmative* evidence" (*Laws of* 1853, *p.* 483, § 39).

In *Scott* agt. *Onderdonk,* the proceedings had not yet reached a point where the burden of showing their invalidity or illegality had been cast upon the owner of the lands sold, and only could be by a conveyance containing *false* recitals. For under the Brooklyn charter, everything essential to the validity of the purchaser's title not recited in the conveyance, he would be obliged to prove. The charter of Buffalo contemplates a much simpler conveyance than does the charter of Brooklyn. That to be given to the purchaser under the Buffalo charter, is only to state "the fact of assessment," and then *the document* is to be *presumptive evidence* that the tax or assessment was legally imposed, &c. The petition of the property owners, and the certificate of the assessors in respect to it, are not required to be recited or alluded to in the conveyance. The statute evidently intends to dispense with the necessity of all such recitals, by declaring what shall be stated in the conveyance. This conclusion is strengthened by the provisions of the 39th section above quoted. To state the "fact of assessment," is much simpler than, and quite different from the stating step by step, all the proceedings by which that fact was accomplished. The remedy by common law certiorari was as complete in *Scott* agt. *Onderdonk,* and the cases cited above, as in *Howell* agt. *The City of Buffalo.* When a case falls within equity jurisdiction, equity does not refuse to exercise its jurisdiction because there is a concurrent remedy at law, especially when the

remedy at law is not one of right. A common law cer-
tiorari is not a writ of right. *The People* agt. *Supervisors
of Allegany* (15 *Wend. R.* 198).

We think that *Howell* agt. *The City of Buffalo*, should
not be regarded as denying the jurisdiction of equity in
cases like the one before us, nor as overruling *Scott* agt.
*Onderdonk.* *Howell* agt. *The City of Buffalo, Efner* agt. *The
City of Buffalo*, and *Vandeventer* agt. *The City of Buffalo*,
were decided by the court of appeals at the same time;
the first two grew out of the paving of Niagara street, the
last out of the paving of Main street in this city. The
alleged ground of invalidity in each case was the insuffi-
ciency of the assessors' certificate in respect to the number,
&c., of the petitioners for the improvement. In *Vande-
venter* agt. *The City of Buffalo*, we held the certificate of
the assessors to be sufficient, and dismissed the complaint.
We have been furnished with the opinions delivered in the
court of appeals in those cases, and with the certificate of
the reporter of the ground upon which they were there
disposed of. It appears that there was but one opinion
written upon the question of jurisdiction. That was writ-
ten by Judge MARVIN, in *Howell's* case. No other member
of the court wrote in *Howell's* case, or in *Efner's* case.

In *Vandeventer's* case Judge DAVIES read an opinion in
favor of affirming the judgment, on the ground that the
certificate of the assessors was sufficient. Judge DENIO
read an opinion for reversal, on the ground that the certifi-
cate of the assessors was insufficient. The reporter certi-
fies that " the judgment was affirmed on the question of
jurisdiction, on the ground stated in the opinion of MARVIN,
J., in the case of *Howell* agt. *The City of Buffalo.* Judge
DENIO concurred in the affirmance, his attention not having
been called to that question when he prepared the above
opinion." It also appears that all the judges concurred
in Judge MARVIN's opinion except SELDEN, J., who did not
vote. From this we understand that the only judge of the

court of appeals who examined the question of jurisdiction was Judge MARVIN, and that the other judges who took part in the decision, concurred with him upon hearing his opinion read.

Judge MARVIN, in his opinion, does not refer to *Scott* agt. *Onderdonk*, nor to the provisions of the charter of the city of Buffalo, giving to the assessment and to the conveyance to the purchaser at the sale the effect above mentioned, which brought the case under the head of equity jurisdiction above stated, and placed it by the side of *Scott* agt. *Onderdonk*. It would seem from the opinion that these provisions were overlooked, and that the case was decided upon the supposition that the purchaser at the assessment sale, would, to support or make out his title, be obliged to prove, step by step, all the proceedings essential to the validity of the assessment and sale. For the learned judge after stating that in *Heywood* agt. *The City of Buffalo*, it was held that an action would lie in equity, "when the assessment on the face of the proceedings to impose it is a valid lien on land, and *extrinsic* evidence is requisite to show its invalidity," disposes of the case under that head of jurisdiction by saying, "the proceedings have not created such a cloud upon the title of the lands of the plaintiff as will justify a court of equity in interfering. The proceedings of the common council were void, *as clearly appears upon the face of the papers necessary to show the proceedings.*"

We think that if the provisions of the charter of Buffalo, to which we have referred, had not been overlooked, some allusion would have been made to them, and to *Scott* agt. *Onderdonk*. Without those provisions, the case was not one of which equity would take cognizance.

Second. In the inquiry which we are making, the term "jurisdiction," is not used in its general sense, which signifies power, but in the limited sense, that the power should not in the particular case be exercised; that to exercise

it would be against established precedent, and erroneous. For the want of jurisdiction in the general sense, the judgment of a court is void and assailable collaterally. For the want of it in the limited sense, in which it is sometimes used, the judgment of the court would be erroneous, but until reversed is of binding force everywhere. The term jurisdiction in this limited sense is only applied to courts of equity. It concedes the power or authority of the court, but asserts that it should not be exercised for the want of equity (*Bangs* agt. *Duckinfield*, 18 *N. Y. R.* 592). Having then jurisdiction in the general sense of the term, and the objection of the want of equity being removed by the act of 1864, we think that we should retain the action and grant the relief.

There must be judgment for the plaintiff upon demurrer. In order to enable the defendant to review our judgment on the last ground, it should have leave to answer on the payment of costs.